Clifton E. McMULLEN, Sr., Plaintiff,

v.

John W. WARNER and Edward A. Davidson, Defendants.

Civ. A. No. 1363–73.

United States District Court, District of Columbia.

July 26, 1976.

Roderic V. O. Boggs, Washington Lawyers' Committee for Civil Rights under Law, Washington, D. C., Arthur G. House, Fly, Shuebruk, Blume & Gaguine, Washington, D. C., for plaintiff.

Earl J. Silbert, U. S. Atty., District of Columbia, Arnold T. Aikens, Thomas G. Corcoran, Asst. U. S. Attys., for defendant.

## OPINION AND ORDER

SIRICA, District Judge.

This is a Title VII racial discrimination suit filed by a black male who was, at the time in question, employed as an accountant by the Navy Department at the U.S. Naval Observatory. Both sides have filed motions for judgment on the administrative record.

### I.

The plaintiff Clifton E. McMullen alleges that he has been discriminated against in two ways:

(1) because he is black, he was denied promotion to a GS–9 pay level position in the summer of 1972;

(2) because he is black, or because he filed an EEO complaint with regard to the first instance of discrimination, he was denied financial aid under a Navy Department grant program for work-related classes he attended during the fall of 1972.

McMullen was promoted to another GS–9 position in March of 1973. As compensation for his failure to be promoted in August of 1972, he seeks the pay he missed because of the delay in promotion, which amounts to $535.30, plus interest, and the seniority he feels he is entitled to. With regard to tuition payment, he seeks the $157 he had to pay to the school himself, plus interest.

In addition, McMullen has sought some general injunctive relief—an order restraining officials at the Observatory from discriminating against him any further, and one commanding them to review their EEO practices and affirmative action programs.

Finally, he has petitioned for an award of reasonable fees for his attorneys' representation of him through the administrative process and this Court.

The government has responded that the Court should give no relief. As to the request for compensation, it admits that McMullen was to some extent discriminated against when he applied for a promotion in the summer of 1972, but denies that he would have gotten the job in any event; it claims that the position for which he ap-

plied would still have been abolished, as it in fact was, or that McMullen would likely not have been the one chosen to fill it. In addition, the government denies that the fact that he is black or that he filed an EEO complaint had anything to do with his failure to receive financial aid for school in the fall of 1972; it argues that the officials at the Observatory were compelled to refuse him aid because McMullen did not fill out a formal request.

As to the plaintiff's petition for injunctive relief, the government claims that this relief would be unwarranted since the Navy Department has taken steps to prevent minority discrimination at the Observatory in the future.

As to the petition for attorneys' fees, the government claims that the applicable statute, 42 U.S.C. § 2000e–5(k) (1970), does not authorize the award of attorneys' fees for representation in court when the plaintiff loses, and not for representation before an administrative body at all.

The Supreme Court has recently made clear in *Chandler v. Roudebush*, —— U.S. ——, 96 S.Ct. 1949, 48 L.Ed.2d 416, 44 U.S. L.W. 4709 (1976), that the plaintiff McMullen has the right to a trial *de novo* if he desires one. But since additional testimony at this juncture would probably be unprofitable, he has indicated that he is content to rest his case on the administrative record already submitted. The government, for its part, has not given any indication that it wishes to produce additional evidence. Therefore, the Court has reviewed the record as it stands and has drawn those inferences from the facts presented that appear reasonable. It has found, for the reasons which follow, that the plaintiff has shown that he was illegally discriminated against with regard to both his promotion application and his request for financial aid for school, and that the discrimination on both counts was a cause-in-fact of the plaintiff's failure to be promoted in the summer of 1972, and to receive financial aid in the fall of that year. Because of this latter finding, the Court need not reach the legal issue raised by the parties concerning the

burden of proof on the cause-in-fact question.

For reasons which also follow, the Court concludes that the plaintiff's showing entitles him to the compensation sought, and to an award of attorneys' fees through both the administrative and judicial proceedings. However, the Court does not feel that the facts justify injunctive relief.

## II.

■ The plaintiff's first claim is that Navy Department officials discriminated against him in his application for promotion to a position in the Administrative Fiscal Division of the U.S. Naval Observatory. The opening, which called for payment at a GS–9 level, was announced on July 17, 1972. At that time, McMullen was working in the Budget and Fiscal Accounting Division of the Observatory, in a position at the GS–7 level. On July 28, he applied for the vacancy. At the end of August, the job was officially abolished.

The plaintiff lays the blame for his failure to get the promotion most squarely on the shoulders of his immediate supervisor at the time, Robert N. Gorey. Gorey has since died. McMullen claims that Gorey was racially prejudiced against him and that because of this he influenced those in command to abolish the position. The complaints examiner who heard this case at the administrative level agreed that Gorey exerted a discriminatory influence against McMullen. More specifically, the examiner found that Gorey at first tried to have a white person promoted to the position; that when he found he could not accomplish this as the job was defined, he tried to rewrite the definition to fit the qualifications of a white man he knew; and that when he was unable to do this and keep the position at the GS–9 level, he recommended the job be abolished. These findings were adopted by the Navy Department and are not disputed by the government.

But the examiner also found that Gorey's racially-motivated influence was not a cause-in-fact of McMullen's failure to get the promotion. This finding the Navy Department also adopted and this is what the government stresses here.

The government argues, first, that the position would have been abolished in any event, as it in fact was. It points out that in July of 1972, Captain Davidson, the superintendent of the Naval Observatory at the time, was concerned that the Navy Department might soon order a reduction in staff at the Observatory. He therefore asked Commander Wachob, his deputy and Corey's immediate supervisor, to determine what positions could be eliminated. Wachob started with the vacant positions, one of which was the GS–9 spot that McMullen applied for. Wachob studied whether this position should be abolished and finally decided it should be. The government argues that the record clearly shows that neither Wachob nor Davidson was racially prejudiced against McMullen, and that therefore the abolition of the job was not the result of illegal discrimination.

This argument has at least two flaws. First, it substantially overestimates Davidson's concern about a possible cutback in staff. Since hiring continued at a fairly steady pace throughout the period, and since at about this same time Davidson promoted his secretary two grades to a GS–9 position, Wachob could have been under little, if any, pressure, to change from the normal practice, found by the complaints examiner, that only rarely are positions abolished or redefined. This practice, then, surely was a factor that affected the final decision of Wachob and would have affected Gorey's actions had he not been prejudiced against McMullen.

On the other hand, the government's argument substantially underestimates the influence Gorey had on Wachob's eventual decision to abolish the position. Given that Wachob had been in his job only about a month and a half before he made the decision, two weeks of which he spent on annual leave, and that Gorey, the next lower supervisor, had been in his position for well over a year, it is natural to presume that Wachob relied heavily on Gorey's help in this matter. Other facts support this. For,

although it is not certain who suggested that the job description be changed in the first place, Wachob did in fact rely nearly completely on Gorey in July of 1972, to rewrite the description to justify keeping it at the GS–9 pay level. And in the latter part of August, when it was clear from a conversation between Wachob and McMullen that Wachob was still undecided about whether the position should be abolished it was to Gorey that Wachob turned for final advice.

Given Wachob's indecision and his reliance on Gorey, and given the general practice that government jobs are only rarely abolished or redefined, the Court concludes that, had Gorey not been prejudiced against McMullen:

(1) in July of 1972, Gorey would either have persuaded Wachob to leave the position as it was or have succeeded in redefining it well enough to justify keeping the position existent at a GS–9 salary level;

(2) in late August, when Wachob turned to Gorey for advice, Gorey would have recommended that Wachob keep the GS–9 position, and this recommendation would have been persuasive.

In short, the Court concludes that Gorey's racially motivated influence was a cause-in-fact of Wachob's decision to abolish the position.

The government also argues that even if the position had not been abolished, since there were four other qualified applicants for it, the odds were against McMullen being the one chosen, even if he had not been discriminated against. But the record shows that management at the Observatory was intent on hiring someone from within the Observatory for the job. As to the position as originally defined, McMullen was the only one in the Observatory rated as qualified to fill it. As to the position as it might have been redefined by Gorey if he had not been prejudiced against McMullen, Wachob gave repeated assurances to McMullen that indicate that the plaintiff would have been the one chosen for it. Therefore, this argument cannot help the government either.

In sum, the Court finds that the plaintiff has shown that illegal prejudice was a cause-in-fact of his failure to be promoted to a GS–9 pay level in August of 1972.

### III.

The plaintiff's second claim is that because he is black or because he filed an EEO complaint alleging job discrimination, he was denied reimbursement for accounting classes he attended during the fall, 1972, semester. The facts, basically, are these. About the same time that the plaintiff was seeking a promotion, he asked his supervisors if the Observatory would pay his tuition for certain work-related classes he planned to attend during the upcoming semester. Such grants are apparently given as a matter of course, and in previous semesters McMullen had gotten them without any problems. Shortly after he filed his complaint alleging job discrimination, however, Gorey told him that funds to reimburse him would not be available that semester. This was simply not true; Davidson later testified that it was clear at the time that funds were available. Subsequently, Wachob also told him that funds would not be available.

Because of what he was told, McMullen did not make formal application for reimbursement and did not get any for the fall term. He did apply, and he was reimbursed, however, for the spring term.

In this Court's view, the fact that the two supervisors told the plaintiff something which was clearly untrue so soon after the plaintiff had filed an EEO complaint leads inevitably to the inference that they did so in retaliation against McMullen's action. The government has done nothing to rebut this inference. Therefore, the Court finds that the failure to reimburse the plaintiff for classes he took during the fall, 1972 term was a direct result of illegal discrimination.

### IV.

McMullen has first sought compensation for the injuries he has suffered. The

Supreme Court has given some guidance in this area in *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). There the Court gave the following standard to be used in determining whether to award back-pay as compensation in Title VII suits against private industry:

> [G]iven a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination. [422 U.S. at 421, 95 S.Ct. at 2373] [footnote omitted]

The government has not suggested that a different standard should apply to Title VII suits against the federal government or to compensatory remedies other than back-pay. Nor can this Court find any satisfactory justification for such distinctions. The Court therefore holds that since the plaintiff has established a direct causal link between the two illegally discriminatory actions and his injuries, he is entitled to back-pay and retroactive seniority for his not being promoted in August of 1972, and to the tuition monies he was not reimbursed for in the fall of that year.

### V.

The plaintiff also seeks an order commanding management at the Observatory to halt its discriminatory practices against him and to reassess its EEO policies and affirmative action programs. The Court does not believe that such an order is appropriate. Gorey was apparently the prime source of discrimination against the plaintiff and he is now dead. In addition, the award of compensation in this case and the possibility of further such awards in the future likely will achieve the same general goals that the plaintiff seeks through an injunction.

### VI.

Finally, the plaintiff has asked for an award of reasonable attorneys' fees for their representation of him here and in the administrative proceeding which preceded it. 42 U.S.C. § 2000e–5(k) (1970), which governs this question, provides that:

> [i]n any action or proceeding under this Title, the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of its costs, and the Commission and the United States shall be liable for costs the same as a private person.

The government argues that the phrase "any action or proceeding" does not include administrative proceedings. But the words themselves certainly do not suggest that Congress intended such a distinction. Nor, in this Court's view, does the section's purpose. That purpose, so far as injured plaintiffs are concerned, is to remove from them the burden of having to pay the costs of attorneys, and thus to remove a deterrent to seeking legal redress. Cf. *Lea v. Cone Mills Corp.,* 438 F.2d 86 (4th Cir. 1971). See *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). Particularly with regard to federal employees, who must seek relief administratively before going to court, see *Brown v. General Services Administration,* ── U.S. ──, 96 S.Ct. 1961, 48 L.Ed.2d 402, 44 U.S.L.W. 4704 (1976), and for whom at that stage a lawyer will often be a practical necessity, the need to relieve this burden appears to be fairly much the same in administrative proceedings as it is in judicial ones.

The Court concludes, therefore, that § 2000e–5(k) authorizes the award of attorneys' fees for the administrative portion of this case as well as for the judicial portion. The Court also concludes, in its discretion, that the plaintiff is entitled to a reasonable award for his attorneys' representation of him in both proceedings, the specific amount to be determined by this Court.

### VII.

Accordingly, it is this 26th day of July, 1976,

**1168**

ORDERED that judgment be entered in favor of the plaintiff Clifton E. McMullen, Sr., to the extent indicated in Parts II, III, IV and VI of this opinion.