Jimmie L. LANGDON, Plaintiff,

v.

The DREW MUNICIPAL SEPARATE SCHOOL DISTRICT et al., Defendants.

No. GC 80–120–WK–O.

United States District Court,
N. D. Mississippi,
Greenville Division.

April 28, 1981.

Charles Victor McTeer and Willie L. Bailey, Greenville, Miss., for plaintiff.

Richard G. Noble, Indianola, Miss., for defendants.

## MEMORANDUM OPINION

KEADY, Chief Judge.

The court has for disposition the motion of Jimmie L. Langdon, plaintiff, for an award of attorney fees as the prevailing party in a suit filed against the Drew Mu-nicipal Separate School District and its board of trustees, invoking federal court jurisdiction under 18 U.S.C. § 1343(3) and (4) for causes of action arising under 42 U.S.C. §§ 1981 and 1983 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. Plaintiff's counsel seek the recovery of fees and expenses in the amount of $28,035. Of the amount claimed, $98 represents out-of-pocket expense, while the balance asserted is for legal services performed by Charles Victor McTeer and Willie Bailey as counsel for plaintiff. The amount of fees demanded is vigorously contested by defendants. The court heard oral argument after receiving affidavits and counteraffidavits relating to the reasonableness of a fee award.

## PRELIMINARY STATEMENT

To aid in an understanding of this case, Langdon, a 51 year old black, employed as principal of Hunter Middle School, had served since 1961 at every level of school administration, including elementary, middle school, and high school. When George Petty, the incumbent superintendent, notified the school board near the close of the year 1979 that he was resigning at the end of the school year, Langdon applied for the position by filling out the form supplied for that purpose. Only one other candidate, Fred Hinton, a 41 year old white, sought the position. Hinton had served in the Drew School system as Title I Coordinator only for the current school year; prior to coming to Drew, he had been principal of the Charleston High School for five years. Both applicants stated their qualifications on their respective forms. Langdon held five different teacher's certificates, the highest of which is a Class AA certificate in administration, a license which is a prerequisite to acting as school superintendent under regulations promulgated by the State Department of Education.[1] In addition,

---

1. Miss.Code Ann. § 37–9–7 provides:

It shall be unlawful for any superintendent, principal or teacher to be employed or contracted with to teach or serve in any of the public schools of this state who does not hold a proper certificate which is valid at the time of such employment or execution of such con-tract. If the certificate held by any superintendent, principal or teacher should expire during the life of any such contract and shall not be renewed, then such contract shall be null and void upon the expiration of such certificate which is not so renewed.

Langdon showed that he had completed various postgraduate courses and earned credit of from 50 to 60 hours in administration courses. Although Hinton stated on his application that he, too, held a Class AA Certificate in administration, this was not true. The highest endorsement he held was as a Class AA Supervisor, a license which qualified him to be a school principal but not superintendent under the State Department's current regulations. At trial Hinton admitted his misstatement, saying that he lacked three hours to be eligible for a Class AA Certificate in administration. This was never told the board.

The board set up a screening committee of three board members who interviewed the two candidates in the latter part of January 1980. The screening committee consisted of the chairman, a white, and two board members, a white male and a black female. The screening committee's goal was to ascertain if they could unanimously agree upon one of the two applicants and make a recommendation. If unable to get unanimous approval, the committee proposed to search for a successor outside the system. Immediately prior to interview, the board chairman received a list of 22 written questions prepared by him and Petty. These questions were passed out to each member of the screening committee, with little, if any, discussion among the members as to the content of the questions and their intended purpose. The board chairman announced that both candidates were qualified for the position of superintendent and that the members were to judge the applicants upon the basis of their answers to the written questions. After separate interviews, the ratings were complied, and Hinton was the unanimous choice to fill the vacancy. On February 4, the board accepted the recommendation and selected Hinton as superintendent for three years commencing July 1, 1980, at an annual salary of $22,500, and a rent-free residence. At no time prior to trial did it appear that Hinton disclosed to the board members that he had misrepresented his certificate, and was disqualified, to serve as superintendent under the state regulations. At trial the members of the screening committee nonetheless defended that decision in favor of Hinton, stating that from the answers given to the questions asked, Hinton showed more leadership and aggressiveness, that his answers were more knowledgeable, and that he exhibited greater ability to work with others in the school system and persons in the community, and was more conversant with school budgeting. When Langdon learned of Hinton's election, he wrote the board chairman on February 7, inquiring as to the basis of the decision. No answer was forthcoming. Langdon was continued as principal of Hunter Middle School at an annual salary of $17,500.

On March 25, Langdon filed a charge of discrimination with EEOC. That agency issued its right-to-sue letter on May 23, 1980, and suit was filed on June 17, seeking appointment to the position of school superintendent, back pay, attorney fees, and costs of the action. On June 30, the court, by agreement of the parties, entered an order authorizing Hinton to serve as interim superintendent pending further action of the court.

After discovery measures by plaintiff, the court on August 21 conducted an evidentiary hearing, agreed to as final for all purposes, and the following day issued a bench ruling in favor of Langdon, holding that on the evidence and law he had made out a prima facie case of racial discrimination under Title VII as well as the Equal Protection Clause, and the school board had failed to rebut the inference of racial discrimination by showing its decision to hire Hinton was for racially non-discriminatory reasons and free of racial motivation. Accordingly, the court ordered Langdon be appointed superintendent for the three-year contract period offered Hinton, and that his back pay be adjusted to July 1 based on salary differences between Middle School principal and superintendent. In addition, Langdon was awarded attorney fees and costs of this action, and given the option of occupying

the rent-free residence available to the superintendent.

After entry of final judgment on August 22, defendants applied for stay pending appeal, which was denied on September 24, 1980. The litigation was concluded when the defendants moved to dismiss their appeal in the Fifth Circuit, which was granted on February 18, 1981.

## NATURE OF SERVICES PERFORMED

The parties disagree on practically all points except that the court must be governed by relevant criteria set up by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5 Cir. 1974), as follows:

1. The time and labor required.
2. The novelty and difficulty of the questions.
3. The skill requisite to perform the legal services properly.
4. The preclusion of other employment by the attorney due to acceptance of the case.
5. The customary fee.
6. Whether the fee is fixed or contingent.
7. Time limitations imposed by the client or the circumstances.
8. The amount involved and the results obtained.
9. The experience, reputation, and ability of the attorneys.
10. The "undesirability" of the case.
11. The nature and length of the professional relationship with the client.
12. Awards in similar cases.

■ Although 42 U.S.C. § 1988 authorizes the court, in the exercise of discretion, to award Jimmie Langdon as the prevailing party, an attorney fee against the defendants, the burden of establishing by a preponderance of the evidence what is a reasonable fee, especially where certain elements of work and the amount of time invested are in sharp dispute, as here, rests upon the plaintiff. In other words, the plaintiff must convince the court that the sum which he seeks constitutes reasonable compensation for legal services performed.

### 1. *Time and Labor Required.*

Analyses of the affidavits of Attorney McTeer and his partner Willie Bailey disclose a combined investment of 194.9 hours. Attorney McTeer asserts that for 177.6 hours he put in the case he should be paid $150 per hour ($26,640), while Mr. Bailey, who claims 17.3 hours, values his services at $75 per hour ($1,297.50). It appears without dispute that the employment by Langdon commenced on March 18, 1980, with an initial conference between him and Attorney McTeer, and it ended on September 3, 1980, when defendants unsuccessfully sought supersedeas of the court's injunction pending appeal.

■ Time sheets indicate that plaintiff's counsel expended approximately 10 hours after Langdon filed his EEOC Title VII charge against the defendants before they were able to get the Commission to investigate the matter, expedite handling of the charge and administratively issue a right-to-sue letter. Defendants contend they should not be chargeable with any time expended by plaintiff's counsel to get the Commission to act in accordance with established procedures to issue a right-to-sue letter, as that delay was solely caused by a slow-moving federal agency and should not be attributable to them. Plaintiff responds that the right-to-sue letter was a jurisdictional prerequisite to institute a Title VII action, which he prepared to join in claims under 42 U.S.C. § 1983 and under the fourteenth amendment. Plaintiff was successful on both claims in this court. Plaintiff cites two decisions from the District Court of the District of Columbia, *McMullen v. Warner*, 416 F.Supp. 1163 (D.D.C.1976), and *Noble v. Claytor*, 448 F.Supp. 1242 (D.D.C. 1978). In both cases fees were allowed for services rendered at the administrative level of the job discrimination proceeding as well as at the judicial portion. Although both cases cited were brought on behalf of federal employees who must seek relief administratively before going to court, the

attorneys performed legal services in proceedings at the administrative level. Neither case involved the assessment of a fee, as here, to get the agency to act at all. Defendants cite no cases in support of their position that such efforts are not compensable. We are indeed reluctant to allow compensation for time spent in obtaining a right-to-sue letter from EEOC. Although at first blush it seems inequitable to penalize a school board for the well-known inordinate delay of the Commission, nevertheless, the issuance of a right-to-sue letter is a jurisdictional prerequisite which must precede the filing of a Title VII action. We conclude these hours are compensable as out-of-court time.

■ Next, plaintiff's counsel lists three hours expended in considering whether to bring a class action, and then decided not to do so. To seek compensation for steps which were not taken is, in our opinion, not only not a novel but brash assertion, and we summarily reject this time as compensable.

■ Plaintiff's counsel next outlines conferences with his client, with his co-counsel, the review of statistical records, and preparation of suit for filing, claiming 19 hours so expended, which the court finds compensable as out-of-court time.

■ Another category of legal work consisted of 37 hours spent in routine legal research, preparing pleadings, conferences between plaintiff's co-counsel McTeer and Bailey, conferences with counsel opposite, and arranging for an agreed order that Hinton might become interim superintendent as of July 1 without prejudice to Langdon's claim. These services, too, were performed out of court, at times convenient to counsel who were not confronted with the pressure of imminent trial.

■ A distinct, outstanding category of service which consumed no more than five hours related to an exploration of Mississippi's certification requirements for the superintendent's position by inquiry to other attorneys, the state department of education and the local Greenville school authorities. The development of this evidence proved to be of great value in the outcome of the case.

■ Pretrial depositions of defendant board members, preparation therefor, and conferences regarding same (18.8 hours) were reasonable steps taken to prepare for the injunctive hearing. Attorney McTeer's affidavit, supplemented by later developments, also shows the expenditure of approximately 36 hours in immediate trial preparation, 4.5 hours in a one-half day evidentiary hearing, 7 hours in preparation for and in oral argument, 4 hours in resisting supersedeas motion, and a two-hour oral argument on fee award based upon the record and affidavits on file. Mr. McTeer next claims five hours post-trial in meeting with defendants to resolve whether Langdon would occupy the superintendent's residence. Finally, McTeer would charge 20 hours for preparing his fee motion and memorandum and gathering ten affidavits from other attorneys as to the basis for reasonable charges.

We find that the total time reasonably invested by Mr. McTeer for effective prosecution of the case is 168.3 hours.[2]

■ Although Attorney McTeer was the lead counsel at all stages, his partner, Willie Bailey, has submitted a claim for 17.3 hours, which represents time Mr. Bailey spent conferring with McTeer and Langdon. Moreover, Mr. Bailey played a passive role at trial. While we recognize 17.3 hours as compensable, after eliminating excessive conference time claimed by McTeer, the value of Bailey's services as co-counsel should be somewhat less than that of McTeer as lead counsel.

*2. Novelty and Difficulty of the Question.*

This case involved the successful presentation of a prima facie case on both constitutional and Title VII grounds and the re-

---

2. We exclude 3 hours spent on what not to do and reduce McTeer's conference time by 7.3 hours as duplicative, excessive, and not reasonably necessary.

sultant inability of the school board to rebut inferences of racial discrimination mandated by familiar Supreme Court and Fifth Circuit decisions. The novelty of the case turned upon plaintiff's demonstrating to the court that by state law and state department of education regulations regarding teacher certification, Langdon was the only applicant qualified for the position, and that the white applicant had in fact misrepresented his credentials. Notwithstanding this disclosure, the board insisted upon acting upon subjective considerations to employ Hinter. Also, the case was notable, and perhaps one of first impression, that school board members must act free of racial motivation in selecting the school superintendent of a municipal school district no less than in choosing a principal or teacher being considered for employment.

3. *Skill Requisite to Perform the Legal Services Properly.*

Victory for Langdon required resourceful counsel to ferret out the state department of certification regulations, to determine Langdon's eligibility, and Hinton's ineligibility as well as misrepresentation. Skill was also demonstrated in thorough trial preparation and in cross-examining hostile board members who persisted in their subjective choice, notwithstanding their belated knowledge that Hinton was ineligible to serve as superintendent, and if continued to be ineligible, loss of accreditation and state funding were likely to be suffered by Drew Municipal Separate School District. Attorney McTeer, as counsel for plaintiff, displayed commendable diligence and zeal in his successful prosecution of the case.

4. *Preclusion of Other Employment.*

Although this may be a factor to be considered, it is not a significant one. Mr. McTeer has an active law practice, relating chiefly to prosecuting civil rights cases. He unquestionably gave prompt attention to the bringing and culmination of this suit.

5. *Whether the Fee is Fixed or Contingent.*

██ At oral argument Attorney McTeer advised that at the outset he was paid a retainer of $1,500, which would satisfy Langdon's liability if Langdon lost, and counsel would receive nothing more. Moreover, according to counsel, if the court allowed Langdon a greater fee than $1,500 as prevailing party, Langdon would be returned his payment in full. Under this arrangement, it cannot be said that the fee was wholly or exclusively contingent since McTeer was assured of certain compensation regardless of the case's outcome. In this connection, defense counsel argues that ordinarily a contingent fee consists of one-third of the recovery; and since the monetary recovery for the three-year period ($22,500 per year) was no more than $15,000 inasmuch as Langdon was already being paid $17,500 as Hunter Middle School principal, the customary contingent fee would amount to $5,000. For reasons that follow, however, we decline to consider this adequate compensation in this employment discrimination case.

7. *Time Limitations Imposed by the Client or the Circumstances.*

This factor should be considered because the office of the superintendent would become vacant on July 1, 1980, and the school term would begin the following month. Prompt action was a virtual necessity. The case was completed without delay, and no confusion resulted upon the opening of school in late August, 1980.

8. *The Amount Involved and the Results Obtained.*

As stated, counsel was successful in establishing Langdon as school superintendent under the same terms the board had approved Hinton, i. e., $22,500 per year for three years, back pay and a rent-free residence. Thus, all relief sought was obtained.

9. *Experience, Reputation and Ability of the Attorneys.*

Messrs. McTeer and Bailey are competent and skilled attorneys in the field of civil rights litigation on behalf of plaintiffs.

McTeer specializes in the trial of civil rights cases in federal courts, both in this jurisdiction and elsewhere. McTeer has had considerable experience in trial work, and is highly regarded as an aggressive trial practitioner. In this case counsel demonstrated excellent ability on behalf of their client.

10. *The "Undesirability" of the Case.*

This is not a factor to be considered, other than the obvious factor that plaintiff's counsel enhanced their reputation as civil rights advocates on behalf of school personnel having complaints of racial discrimination in employment.

11. *The Nature and Length of the Professional Relationship With the Client.*

The length of the assignment has been covered. There is no evidence that Langdon had been represented by Messrs. McTeer and Bailey prior to this controversy.

12. *Awards in Similar Cases.*

This is the area in which the greatest dispute arises. Both sides have presented affidavits of other counsel as to what constitutes a proper charge for legal services in federal court.

Plaintiff has presented affidavits from ten lawyers, eight in this district and two from outside. They have, in themselves, a considerable range. Starting from the high are nonresident affidavits from Cheryl D. Grant of Hamilton, Ohio, that a proper attorney fee should be the maximum of $150 per hour down to a minimum of $50, and from Delores Holman of the Wisconsin bar that noncontingent federal court litigation in the Milwaukee area ranges from $50 to $125 per hour, with McTeer entitled to the maximum. Mississippi attorneys who filed affidavits on behalf of McTeer are Edward Blackmon, Jr. of Canton, attesting to a reasonable charge of $100 to $175 per hour; Willie J. Perkins, Jr. of Greenwood, $100 to $175 per hour; Nausead Stewart of Jackson, $70 to $200 per hour; Fred L. Banks, Jr. of Jackson, $120 per hour; John L. Walker of Jackson, $100 per hour; and Wil-

bur O. Colom of Columbus, $110 to $175 per hour. These Mississippi attorneys are almost exclusively civil rights specialists for plaintiffs and are of the view that a "multiplier," bonus, or extra allowance of from 50 to 100% should be allowed to successful counsel who accept employment discrimination cases on a contingent arrangement with the client. Plaintiff also submits affidavits of two members of the Greenville bar, who are not known primarily as civil rights plaintiffs' counsel. W. Wayne Drinkwater, Jr., six years in the practice, is of the opinion that average hourly rates range from $50 to $70 per hour for ordinary litigation in federal court and that in employment discrimination cases handled on a contingent basis, a risk "multiplier" of 50 to 100% is justified, depending upon the complexity of the case; he concludes such representation by Attorney McTeer should be calculated from $75 to $140 per hour. Eugene M. Bogen, 13 years at the Mississippi bar, states that reasonable hourly fees in federal court cases approximate $75, and that in this discrimination suit Attorney McTeer should be awarded an attorney fee of $90 to $100 per hour. Mr. Bogen added that in his judgment there is no basis for drawing a distinction between time spent in court and out of court, or on strictly legal matters versus non-legal matters.

Against this array of affidavits, defendants present affidavits of three veteran trial attorneys of this district who are not primarily civil rights specialists but who are familiar with the defense of Title VII suits. Will A. Hickman of Oxford states he is generally familiar with hourly rates charged for representing plaintiffs in civil rights litigation in the Northern District of Mississippi, and that based on his knowledge and experience, the average hourly rate charged by competent trial attorneys in federal court litigation is currently $50 an hour. P. J. Townsend, Jr., an experienced trial attorney of Drew, states his involvement in civil rights litigation has been extensive, including civil actions involving employment discrimination and constitutional issues, and that he has represent-

ed both plaintiff and defendants. According to Townsend, the average hourly rates charged by competent trial attorneys in this area range from $35 to $45 per hour for out-of-court trial preparation and $45 to $55 for in-court work. Fred C. DeLong, for 20 years a member of the Greenville bar and familiar with federal court litigation involving employment discrimination, stated that the average hourly rate generally charged by experienced competent counsel in federal court ranges from $55 to $75 per hour, with the particular rate ordinarily being governed by the trial experience and reputation of the individual lawyer, the nature and complexity of the case. DeLong further states that upon inquiry of attorneys for defendants, he has never known or heard of any trial lawyer residing in this district charging an hourly rate in federal court litigation of between $100 and $150 per hour. DeLong further stated "in my opinion such an hourly rate would be unreasonable and shockingly high in any case where an hourly rate was the appropriate basis for determining a proper and reasonable attorney's fee."

Townsend and Hickman expressed the opinion that there is a valid distinction between making a greater charge for time spent in court than time spent out of court, or for matters not of a strictly legal nature.

It thus appears that there is a substantial dispute as to what constitutes a reasonable hourly rate for charges in federal court litigation of a noncontingent nature, i. e., where work is to be paid for by a client capable of compensating counsel regardless of the outcome of the case. The court finds as a fact that fees customarily charged by attorneys to their clients on an hourly basis range from $50 to $60 per hour for in-court time and from $40 to $45 per hour for out-of-court time. Moreover, work of a nonlegal nature, i. e., such items as could be done by one not trained in the law and not strictly legal work, would carry a lesser charge. The court further finds that the

"customary" charge is one subject to considerable variance depending upon the skill, reputation, standing and resourcefulness of the lawyer in the community in which he practices, and such qualities are necessarily measured against those attorneys in the area he would be expected to oppose. Moreover, the difficulty of a particular case and the excellence of a particular lawyer may be seldom repeated in other cases, even though the litigation may be of the same general character, whether civil rights or ordinary litigation.

Plaintiff's argument that there should be no distinction between charges made for in-court and out-of-court time, nor for work done of a strictly legal nature and of a nonlegal nature, is rejected on the basis of substantial evidence before the court as well as other considerations which are equally well known to this judge. In the first place, a distinction for a lesser charge for out-of-court time takes into account the fact that such services are rendered at the convenience and at the time the lawyer may see fit to perform the same, that usually he is in his or her office available to other clients and performing other business, and the attention of the attorney is in no sense of the word concentrated upon a single case, the trial of which may be weeks away. The Congress of the United States, in the enactment of the Criminal Justice Act, has seen fit to draw a distinction between the value of time spent in court and that spent out of court, making the in-court time one-third more than out-of-court time.[3] Although courts on occasion do not distinguish between in-court and out-of-court time, we find there is a basis in fact and in logic for so doing, recognizing that a differential ought to be made in the interest of fairness. Time expended in a case is simply one of the criteria for judging a reasonable fee; it is by no means the sole guide.

**3.** 18 U.S.C. § 3006A. The rates adopted, $30 an hour for in-court time and $20 an hour for out-of-court time for court-appointed counsel in criminal cases are certainly out of date, and no one could argue against Congress substantially increasing, if not doubling, the rates for in-court and out-of-court time in view of current economic conditions.

■ As the Fifth Circuit has acknowledged in *Johnson* and its bountiful progeny, other factors should be considered. But even when time is being considered, it is surely proper for the trial court to exercise its judgment and knowledge of the case in reducing hours which may be excessive, or raising hours where sometimes inadequate, based on what may be claimed by the interested attorneys. It is also in keeping with justice to distinguish between those hours which are spent in routine investigation and preparation for trial and the time which calls for heavy concentration and great pressure in immediate preparation for trial, actual trial, and all items directly connected with the trial.

■ It is the duty of the district court not to abdicate its obligation to determine the reasonable value of professional services and be controlled only by opinions advanced by counsel through affidavit or otherwise. The views of counsel are, of course, helpful, particularly in these days of rising costs and continuing inflation and ought to be considered by the court. However, familiarity with legal fees is an area in which the Fifth Circuit has frequently stated it has expertise and on occasions has itself determined what should constitute a reasonable fee. A recent case involving the exercise of such appellate discretion is *In the Matter of U. S. Golf Corporation,* 639 F.2d 1197 (1981), in which, though involving the application of *Johnson* factors to services rendered in a bankruptcy case, the Court of Appeals has exercised its expertise without enumeration of *Johnson* criteria. With deference, we quote from the *Golf* opinion, authored by Circuit Judge Randall, the following:

> To this we add a legal fee for the prosecution of this appeal. In the interests of judicial economy, *see In re Robinson,* 634 F.2d 258 (5th Cir. 1981); *Johnson v. Combs,* 471 F.2d 84 (5th Cir. 1972), *cert. denied,* 413 U.S. 922, 93 S.Ct. 3063, 37 L.Ed.2d 1044 (1973), we have ourselves set this amount at $1,000. Neville's total legal fee, therefore, is as follows:

| | |
|---|---|
| 310 hours (out-of-court time) at $45 | $13,950. |
| 16 hours (in-court time) at $50 | 800. |
| prosecution of this appeal | 1,000 |
| Total | $15,750. |

Plaintiff strongly relies upon the Fifth Circuit opinion in *Neely v. City of Grenada,* 624 F.2d 547, which reversed the decision of this court as to attorney fee determination. *Neely* is quite inapposite to what should be the result here, for *Neely* is easily distinguishable for a number of reasons. Unlike the present case involving a single school employee, *Neely* was a class action brought against the City of Grenada claiming racial discrimination in employment in practically all departments of the city government. *Neely v. City of Grenada,* 438 F.Supp. 390 (N.D.Miss.1977). *Neely* not only involved extensive discovery which covered four years of litigation but required a seven-day trial with active participation of two attorneys and resulted in recovery of substantial backpay for members of the plaintiff class as well as affirmative injunctive relief banning future discrimination in employment. Unquestionably *Neely* was and remains the most extensive litigation on the subject in Mississippi involving all aspects of municipal government vis-a-vis racial employment discrimination. This district court set fees in that case for two attorneys based upon what it believed to be the then prevailing customary charge for legal services, without adding a bonus or incentive for the contingent character of the litigation. Fees were fixed at $45 for the lead counsel and $35 for co-counsel for work in court and of a legal nature and $30 an hour for work of an out-of-court, nonlegal nature. 77 F.R.D. 484 (1978). This award was reversed as inadequate by the Fifth Circuit because of uncontradicted affidavits filed by four civil rights attorneys who gave opinions that complex employment litigation of a contingent nature justified fees ranging from $75 to $100. 624 F.2d 550–51. Grenada chose not to dispute the affidavits of the civil rights attorneys. It was on the basis of uncontradicted affidavits that Judge Goldberg concluded that the hourly rate for complex employment discrimination litigation, taken on a contingent basis, supported

a holding that "a fee based on $100 per hour is reasonable." We emphasize that the appellate court so held by finding that "the evidence, *without contradiction*, indicates that an award based on an hourly rate between $75 and $120 per hour is appropriate and because the *Johnson* factors weigh heavily in appellants' favor." at 551 (emphasis added).

A recent decision by our colleague, Honorable Orma R. Smith, faced with contradictory affidavits from civil rights attorneys and defense counsel, in a case involving the reinstatement of a single school teacher, found a reasonable fee of $75 per hour for in-court time and $60 an hour for out-of-court time. *Cantrell v. Vickers*, EC 79–97–OS, unreported (Feb. 18, 1971, E.D. Miss.). We follow that holding here and believe it represents a proper bonus or multiplier for a contingent fee in this employment discrimination case.

■ The differences between *Neely* and the case at bar are so great that this court is of the opinion that the assertion that Attorney McTeer should receive $100 to $150 per hour is not merely excessive but is exorbitant, wholly unconscionable, and completely unjustified by the application of the *Johnson* criteria or by any other standards known to the bench and bar. Attorneys who represent civil rights plaintiffs in employment discrimination cases should, of course, be paid reasonably, and due account must be taken of the contingent nature of their employment. Nevertheless, *Johnson* was not, in our view, designed to establish a formula whereby attorneys successful in civil rights litigation generally are to receive compensation from the losing adversary in sums which shock the conscience. The *Johnson* criteria may weigh heavily in favor of plaintiff in this case, yet allowance of a reasonable compensation for professional services remains the task of the court. In our judgment, a bonus, multiplier, or incentive allowable to Attorney McTeer for his admittedly successful work, performed on a partly contingent employment, justifies an award to him of $75 an hour for the 83.1 hours of in-court time and $60 an hour for the 85.2 hours of out-of-

court time which has been heretofore recognized in this opinion. These allowances to Langdon for Attorney McTeer's services amount to $11,344.50. In addition, the time invested by Bailey (17.3 hours) calculated at $60 per hour is fixed at $1,038. The total fees for services rendered by Messrs. McTeer and Bailey amount to $12,382.50.

■ The only out-of-pocket expense claimed is $98 for cost of traveling 490 miles at 20¢ per mile. This item is quite reasonable and is hereby approved.

■ Plaintiff on September 16, 1980, submitted bill of costs in the sum of $837.11, and on the day following costs in that amount were taxed by the clerk. No objection to the bill of costs was filed with the clerk within five days after taxing same, and no motion has been filed by defendants for judicial review of the clerk's action. Under these circumstances, nothing can come before the court until the clerk has acted and an objection has been made. *See* Rule 54(d), F.R.Civ.P.; 10 Wright & Miller, Federal Practice & Procedure, § 2679, pp. 240–42. Although defendants now object to a portion of the items claimed in the bill of costs, we hold that since proper objection has never been made, their objection comes too late. We, therefore, allow as taxable costs of $837.11 as claimed by plaintiff.

Let judgment issue accordingly.