Anne E. SPENCER, Plaintiff–Appellant,

v.

GENERAL ELECTRIC COMPANY, Defendant–Appellee,

Equal Employment Opportunity Commission; The Equal Employment Advisory Council, Amici Curiae,

and

James Russell Neal, Defendant.

Anne E. SPENCER, Plaintiff–Appellee,

v.

GENERAL ELECTRIC COMPANY, Defendant–Appellant,

Equal Employment Opportunity Commission, Amicus Curiae,

and

James Russell Neal, Defendant (Two Cases).

Anne E. SPENCER, Plaintiff–Appellant,

v.

GENERAL ELECTRIC COMPANY, Defendant–Appellee,

Equal Employment Opportunity Commission, Amicus Curiae,

and

James Russell Neal, Defendant.

Anne E. SPENCER, Plaintiff–Appellant,

v.

GENERAL ELECTRIC COMPANY; James Russell Neal, Defendants–Appellees,

Equal Employment Opportunity Commission, Amicus Curiae (Two Cases).

Nos. 88–3892, 88–1302, 88–1389, 89–2323, 89–2350 and 89–2356.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 2, 1989.

Decided Jan. 16, 1990.

Rehearing Denied Feb. 13, 1990.

Jane Lang (Rebecca K. Troth, Paul C. Sprenger, Sprenger & Lang, on brief) for appellant.

Samuel A. Marcossan (Charles A. Shanor, Gen. Counsel, Gwendolyn Young Reams, Associate Gen. Counsel, Vincent J. Blackwood, Asst. Gen. Counsel, E.E.O.C., on brief) for amicus curiae.

Peter G. Nash (Jonathan R. Mook, Frances C. Moran, Ogletree, Deakins, Nash, Smoak and Stewart, on brief) for appellee.

Robert E. Williams, Douglas S. McDowell, Garen E. Dodge, McGuiness & Williams, on brief) for amicus curiae.

Before HALL and MURNAGHAN, Circuit Judges, and HARGROVE, United States District Judge for the District of Maryland, sitting by designation.

K.K. HALL, Circuit Judge:

Anne E. Spencer and the General Electric Company ("G.E.") each appeal from the judgments entered below in favor of Spencer on her hostile environment sexual harassment claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and in favor of G.E. on all other claims. Likewise, both parties appeal from the district court's award of attorney's fees to Spencer as a prevailing party under 42 U.S.C. § 2000e–5(k). Finding no error worthy of reversal, we affirm.

I.

This case arises from Spencer's allegations of sexual harassment and abuse by her immediate supervisor at G.E., James Neal. We leave the details of these allegations to the thorough district court opinion on the merits of Spencer's claims. *Spencer v. General Electric Co.*, 697 F.Supp. 204, 206–16 (E.D.Va.1988). For our purposes, an outline of the procedural history of the case will suffice.

Spencer filed suit against Neal and G.E. in November 1987. She alleged sexual harassment under Title VII, as well as the state tort claims of assault and battery, intentional infliction of emotional distress, invasion of privacy, and negligent supervision. The basis of these claims was the allegation that over approximately a two-year period, Neal, during office hours, repeatedly solicited Spencer for sexual relations and repeatedly sexually assaulted her. This conduct was alleged to have culminated in Neal's rape of Spencer in October 1986.[1] Spencer sought in excess of one million dollars in compensatory and punitive damages as well as appropriate equitable relief.

Prior to trial, the district court dismissed the invasion of privacy claims and the negligent supervision claim on the grounds

that Spencer had failed to state viable causes of action under Virginia law. The court also ruled that Virginia's two-year statute of limitations, Va.Code Ann. § 8.01–243(A), barred all claims arising from any assaults which occurred more than two years before Spencer filed suit.

A simultaneous bench and jury trial on the Title VII and remaining tort claims commenced on May 24, 1988. At the close of Spencer's evidence, the court directed a verdict in favor of G.E. on all remaining tort claims. The court reasoned that the only way G.E. could be held liable for Neal's tortious conduct was through the doctrine of *respondeat superior* and that, since Neal's acts were clearly outside the scope of his employment, the claims had to be dismissed because Spencer had produced insufficient evidence of G.E.'s ratification of Neal's actions. Alternatively, the court ruled that even if G.E. had ratified Neal's actions, Spencer's claims were precluded by the Virginia Workers' Compensation Act, Va.Code Ann. §§ 65.1 *et seq.* ("WCA").

After the directed verdict, Spencer decided to sever her Title VII claims from the tort claims and reached an agreement with Neal to dismiss her claims against him without prejudice, pending final resolution of G.E.'s tort liability. The court then granted Spencer's motion to this effect and, pursuant to Spencer's Fed.R.Civ.P. 54(b) motion, entered final judgment in favor of G.E. on the tort claims.[2]

The jury was then dismissed and the trial continued on the Title VII claims, eventually lasting eight days. Spencer tried her case under both the hostile environment and *quid pro quo* theories of sexual harassment. In a lengthy opinion issued on October 4, 1988, the district court found in favor of Spencer on the hostile environment claim, but against her on the *quid pro quo* claim. *Spencer*, 697 F.Supp. at 216–19. Specifically, the court found that

---

1. When Spencer reported these allegations to G.E. in late October 1986, she was immediately transferred to the same grade level position in another G.E. office. G.E. then promptly investigated the charges and Neal was removed from his management position, without a reduction in pay, in December. In April 1987, when it

became evident that Neal had lied during the investigation, he was forced to resign. *Spencer*, 697 F.Supp. at 215–16.

2. On June 23, 1988, Spencer appealed this order and G.E. cross-appealed. Nos. 88–3897, 88–1302.

although Spencer had proven that sexual horseplay was prevalent in her workplace and that Neal had solicited her for sex, she had failed to prove that any sexual assaults had ever occurred or that her refusal to have sex with Neal had, in any way, prejudiced her employment. *Id.* at 207–17. Because G.E. had quickly transferred Spencer and because Spencer had not missed any uncompensated days from work, the court found that she could not prove any tangible loss due to the sexual harassment and, accordingly, awarded nominal damages of one dollar. *Id.* at 219. The court also found that since Neal had left G.E. and G.E. had implemented an extensive anti-sexual harassment policy, injunctive relief was not necessary.[3]

Spencer promptly moved for reconsideration of the denial of injunctive relief. In a thorough memorandum order, the district court denied the motion, again basing its decision on the unlikelihood of future sexual harassment problems at G.E. in view of G.E.'s commitment to its newly-implemented anti-harassment policy.[4] *Spencer v. General Electric Co.*, 703 F.Supp. 466 (E.D.Va.1989).

Spencer submitted a petition for a partial award of attorney's fees under 42 U.S.C. § 2000e–5(k) on the basis of the judgment in her favor on the hostile environment claim. She claimed in excess of $380,000.00 in fees. *Spencer v. General Electric Co.*, 706 F.Supp. 1234, 1236 (E.D.Va. 1989). Not unexpectedly, G.E. contested the petition on several grounds—primary among them being that she was not a prevailing party and that all fees incurred after G.E.'s Fed.R.Civ.P. 68 offer of judgment were not recoverable because the judgment Spencer was eventually granted was less favorable than G.E.'s offer.[5] The district court agreed with Spencer that she had prevailed in the litigation because, among other things, she had forced G.E. to

adopt the anti-harassment policy. *Id.* at 1237–38. However, the court agreed with G.E. that the relief Spencer received, including the anti-harassment policy, was not more favorable than G.E.'s offer, especially in monetary terms. *Id.* at 1241. Consequently, the court disallowed all post-offer fees, and awarded Spencer pre-offer attorney's fees of $52,179.00, local counsel fees of $2,252.20, and $2,278.20 in costs and expenses. *Id.* at 1248. Both parties have appealed this award. Nos. 89–2350, 89–2356.

## II.

To facilitate our discussion of the issues raised in this appeal, we will address them in three related areas of law—the Virginia tort claims, the merits of the Title VII claims, and the award of attorney's fees under 42 U.S.C. § 2000e–5(k).

### A. *Virginia Tort Claims*

Spencer contends that the district court erred in holding that Virginia law does not recognize claims for invasion of privacy and negligent supervision. She also argues that the court was in error by dismissing, under the Commonwealth's statute of limitations, those portions of her claims which were based on Neal's acts which occurred more than two years prior to her filing suit. She contends that these acts squarely fit within the "continuing tort" exception to the statute. Spencer also maintains that the trial court erred in directing a verdict in favor of G.E. on her assault and battery and intentional infliction of emotional distress claims. She contends that G.E. is vicariously liable for Neal's torts because Neal, as G.E.'s manager and agent, was aided in accomplishing his tortious acts by the existence of the agency relationship. Thus, the mere existence of the agency relationship under these

---

**3.** From this judgment, Spencer appealed both the *quid pro quo* finding and the denial of injunctive relief. No. 88–1389.

**4.** Spencer also appealed this ruling. No. 89–2323.

**5.** G.E.'s offer included $10,000 plus costs and attorneys' fees, reinstatement of all leave days expended by Spencer, placement of Spencer in a position of equal grade as her previous position, and an injunction prohibiting G.E. from any employment practice violating Title VII. *Id.* at 1241.

circumstances establishes liability, regardless of whether the prerequisites of *respondeat superior* are shown. Alternatively, while conceding that Neal's actions were outside the scope of his employment, Spencer argues that the evidence at trial presented a jury issue over G.E.'s ratification of those actions and, therefore, a directed verdict on the grounds of *respondeat superior* was in error. She also contests the court's alternative holding that the WCA precluded G.E.'s liability. Finally, she challenges the trial court's exclusion under Fed.R.Evid. 403 of evidence of Neal's consensual sexual relations with other of his subordinates. We take up these contentions in turn.

■ 1. While Spencer's invasion of privacy claims were dismissed purely as a matter of law, *i.e.,* on the grounds that such a claim does not exist in Virginia, we are precluded from reaching this issue, as well as the arguments surrounding her assault and battery claim, by the facts as found by the trial court. Recently, in *Dwyer v. Smith*, 867 F.2d 184, 192–93 (4th Cir.1989), we reaffirmed our rule that when a trial court's findings of fact in a fully-litigated Title VII claim are dispositive of a claimant's previously-dismissed legal claims, any error in the dismissal of those claims has been rendered harmless.[6] Such is the case here.

Spencer readily admits that proof of the sexual assaults by Neal is "essential" to both her invasion of privacy and assault and battery claims. This proof she simply failed to produce. As the trial court noted: "Spencer has failed to carry her burden of proving the sexual assaults by a preponderance of the evidence.... Accordingly, the Court cannot find that Neal sexually assaulted Spencer." *Spencer*, 697 F.Supp. at 212. Likewise, the court concluded that as to the occurrence of the alleged rape,

"Spencer has failed to carry her burden of proof." *Id.* at 213.

■ Spencer argues that these findings do not collaterally estop her legal claims because they were not essential to the disposition of her Title VII claims. This argument is at best disingenuous. While sexual assault and rape are certainly not elements of a Title VII sexual harassment cause of action, Spencer based her civil rights claims firmly on the existence of Neal's attacks. She is the one who made these findings essential to her Title VII claims by the way she pleaded and tried this case. To now allow her to avoid the effects of her chosen course would fly in the face of the principles of fairness and judicial economy which underlie the collateral estoppel rule. *See Ritter v. Mount St. Mary's College,* 814 F.2d 986, 991–92 (4th Cir.1987).

Spencer was afforded a full and fair opportunity to prove the assaults before the district court and failed. Consequently, she is now collaterally estopped from raising against G.E. the legal claims based on the unproven assaults, *i.e.,* invasion of privacy and assault and battery.[7] Accordingly, any error in regard to these claims was harmless and, without comment on the trial court's reasoning, we affirm its dismissal of the invasion of privacy claim and its directed verdict on the assault and battery claim.

■ 2. To reject Spencer's contention that there exists in Virginia a cause of action against G.E. for its negligent supervision of Neal, we need look no further than the Supreme Court of Virginia's decision in *Chesapeake and Potomac Telephone Co. of Virginia v. Dowdy*, 235 Va. 55, 365 S.E.2d 751 (1988). In *Dowdy*, the Virginia court framed the issue as whether "the common law of Virginia recognizes a tort of negligent supervision of an employ-

---

**6.** This rule has been met with criticism in other circuits. *Dwyer,* 867 F.2d at 192 n. 4. Much of this criticism centers on the premise that this rule is in derogation of a plaintiff's right to a jury and an invasion of the jury's exclusive province as fact finder. Without commenting on the validity of this premise, we note that it is substantially missing here because Spencer made the tactical decision to dismiss her jury

claims to pursue the Title VII claims before the court.

**7.** We express no opinion as to the collateral estoppel effect of the trial court's findings in any subsequent action by Spencer against Neal personally.

ee by the employer and its managerial personnel." *Id.* 365 S.E.2d at 751. In answering the question in the negative, the court reasoned that there can be no negligence unless there has been the breach of a legal duty and "[i]n Virginia, there is no duty of reasonable care imposed upon an employer in the supervision of its employees under these circumstances...." *Id.* 365 S.E.2d at 752–53.

Not surprisingly, Spencer attempts to distinguish her case from *Dowdy* on the "circumstances." In *Dowdy*, the negligent supervision claim was based on the employer's negligence in failing to stop the employee's supervisors from intentionally harassing and excessively criticizing the employee about his job performance. *Id.* 365 S.E.2d at 752–53. Spencer contends that her claim is inherently different primarily because it is based on Neal's sexual assaults and sexual solicitations. However, as our previous discussion made clear, Spencer can no longer rely on the allegations of assault which she has failed to prove. Consequently, her claim is reduced to one based on G.E.'s negligence in failing to prevent Neal from intentionally harassing her by making unwanted sexual solicitations and by engaging in sexual horseplay. Thus understood, Spencer's claim is not sufficiently different from the claim in *Dowdy* to remove it from the ambit of *Dowdy*'s holding. Therefore, we affirm the district court's dismissal of the negligent supervision claim.[8]

■ 3. Spencer's final state law argument is that the trial court erred in directing a verdict on the question of G.E.'s vicarious liability for Neal's alleged torts, including her claim for intentional infliction of emotional distress. She argues that *respondeat superior* is not the only basis for holding G.E. liable for this tort and offers as an alternative an agency theory of liability whereby an employer is made liable for the torts of its employee-agent when the mere existence of the agency relationship facilitates the consummation of the tort.

*See* Restatement (Second) of Agency § 219(2)(d) (1958); *e.g., Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1558–59 (11th Cir.1987).

The problem with this theory of vicarious liability, as G.E. points out, is two-fold. First, the cases that Spencer relies upon to support her argument involve Title VII liability, a much different animal than common law tort liability. *See Vinson v. Taylor,* 753 F.2d 141, 150–51 (D.C.Cir.1985), *aff'd on other grounds sub nom. Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Title VII employer liability is premised on a statutory scheme which broadly defines "employer," 42 U.S.C. § 2000e(b), and which is intended to effectuate the remedial and public policy goals of the Civil Rights Act of 1964. Common law tort liability, on the other hand, is not powered by the public policy engine of Title VII, but rather is concerned primarily with the proper economic balance of risks and harms in society. *Id.* Understandably, these differing rationales make us hesitant to expand Virginia's common law on a theory of liability rooted in Title VII.

This leads to the second problem with Spencer's argument—that she cannot point to a single Virginia case which adopts her proposed theory. In ruling on state law issues our task is clear: to apply the law of the state as we determine it would be applied by the state courts. 19 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure, § 4507 (1982). This determination is one made with caution, especially when we are asked, as Spencer does here, to extend state law to a point beyond which a state's highest court has not taken it. *W.A. Wright, Inc. v. KDI Sylvan Pools, Inc.,* 746 F.2d 215, 218 (3d Cir.1984). To adopt Spencer's proffered theory would dramatically broaden an employer's vicarious liability under Virginia law and would do so without any indication from the Virginia courts that they are so inclined. Such an extension of a state's common law is

---

**8.** We do not reach G.E.'s argument that, under these circumstances, the WCA bars a negligent

supervision cause of action.

one that a federal court should not make. Consequently, the district court was correct in limiting G.E.'s vicarious liability to the traditional rules of *respondeat superior.*

■ Likewise, we have no trouble affirming the district court's conclusion that Spencer did not make out a jury question of G.E.'s ratification of Neal's acts. As the district court noted, there is simply no evidence that G.E. ratified Neal's harassing conduct. In fact, the evidence at trial was that as soon as G.E. was informed by Spencer of the alleged incidents, she was immediately transferred away from Neal and an investigation was launched which eventually resulted in Neal's resignation from the company. *Spencer,* 697 F.Supp. at 215–16. On these facts, the district court's directed verdict on *respondeat superior* grounds must be affirmed.[9]

### B. *Title VII*

Spencer has two complaints about the trial court's holding on her discrimination claims. First, she contends that the court properly ruled at the end of her evidence that she had made out her *prima facie* case of *quid pro quo* sexual harassment and, consequently, the court had to have erred in ruling at the end of the case that she had not made the necessary *prima facie* showing. She further contends that this error led the court to erroneously rule in favor of G.E. on the claim. Second, Spencer maintains that the court granted her inadequate relief on her successful hostile environment claim. Specifically, she requests a grant of "make whole" economic relief in the form of restoration of 49 leave days that she expended in pursuit of this litigation and in recovery from the stress-related illnesses which she alleged were the result of Neal's sexual harassment. Spencer also contends that the trial

court erred by not granting her injunctive relief against G.E. She argues that the anti-sexual harassment policy unilaterally adopted by G.E., and done so only after being prodded by this litigation, does not give adequate assurance that sexual harassment will not recur. We address these arguments seriatim.

This Circuit has acknowledged that the many forms of sexual discrimination can be categorized, for analytical purposes, into two varieties: harassment that creates an offensive (hostile) work environment and harassment where sexual consideration is demanded in exchange for job benefits. *Katz v. Dole,* 709 F.2d 251, 254 (4th Cir. 1983). This latter variety, known as *quid pro quo* sexual harassment, can be established by a five-element *prima facie* case:

1. The employee belongs to a protected group.

2. The employee was subject to unwelcome sexual harassment.

3. The harassment complained of was based upon sex.

4. The employee's reaction to the harassment affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment. The acceptance or rejection of the harassment must be an express or implied condition to the receipt of a job benefit or cause of a tangible job detriment to create liability. Further, as in typical disparate treatment cases, the employee must prove that she was deprived of a job benefit which she was otherwise qualified to receive because of the employer's use of a prohibited criterion in making the employment decision.

5. The employer, as defined by Title VII, 42 U.S.C. § 2000e(b), knew or should have known of the harassment and took no effective remedial action.[10]

---

**9.** Our holding that G.E. cannot be held vicariously liable for any of Neal's tortious actions obviates any need for us to reach Spencer's argument over the "continuing tort" exception to the Virginia statute of limitations. Similarly, there is no need for us to reach her evidentiary challenge. Further, we express no opinion on the district court's alternative holding that the

intentional infliction of emotional distress claim was barred by the WCA.

**10.** Of course, in a case such as this where the sexual harassment is being committed by one of the employer's supervisors, this element is automatically met because under 42 U.S.C. § 2000e(b) knowledge of the harassment is imputed to the employer through its agent-supervi-

*Glezos v. Amalfi Ristorante Italiano, Inc.,* 651 F.Supp. 1271, 1276 (D.Md.1987), *citing Hensen v. City of Dundee,* 682 F.2d 897, 903–05 (11th Cir.1982); *Spencer,* 697 F.Supp. at 216–17.

Once the *prima facie* case is made, an inference that *quid pro quo* sexual harassment has occurred arises and the burden of production shifts to the defendant to rebut this presumption with legitimate, nondiscriminatory reasons for the employment decision in question. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). If the presumption is rebutted, the burden of production returns to the plaintiff to show that the defendant's proffered nondiscriminatory reasons are pretextual and that the employment decision was based on a sexually-discriminatory criterion. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. Throughout this shifting scheme of evidentiary burdens, however, the ultimate burden of persuasion rests on the plaintiff. *Id.* at 253, 101 S.Ct. at 1093.

■ Assessing Spencer's case under this analysis, we agree with her that, contrary to the district court's holding, she made out her five-part *prima facie* case. Our conclusion is borne out by the district court's own findings of fact. The district court found that Spencer suffered sexual harassment at the hands of her immediate supervisor Neal, in the form of unwanted sexual solicitations and sexual horseplay. Thus, there can be no question that elements 1, 2, 3, and 5 have been met. As to element 4, she produced evidence that another female employee who worked under Neal, and who succumbed to his sexual desires, received larger pay increases than she received. *Spencer,* 697 F.Supp. at 208. Furthermore, Spencer proved that there was a job opening for which she sought a promotion, that she was qualified for the position, that the promotion was offered by Neal, that

she refused Neal's solicitations, and that the job remained open. *Id.* at 207. We find this evidence more than sufficient to establish element 4 and complete the *prima facie* case.

■ Where our agreement with Spencer's argument ends is that we do not believe that the district court's confusion over whether or not a *prima facie* case had been established requires us to reverse the court's ultimate holding. Rather, our review of the district court's meticulous findings of fact leads us to conclude that the *prima facie* case was rebutted by G.E. and that Spencer could not overcome that rebuttal.

This conclusion is also borne out by the trial court's findings of fact. Specifically, the court found that Neal never mentioned sex in connection with a promotion, *id.* at 207; that job benefits received by the employee who did have sex with Neal were based on merit, not sex, and that the employee received no preferential treatment on the basis of sexual favors, *id.* at 208; and that Neal did process and submit the necessary paperwork for Spencer's promotion. *Id.* at 207. It is clear from these unchallenged findings of fact[11] that the presumption of *quid pro quo* harassment had been irrefutably rebutted by G.E. Consequently, although the district court did not reach its result by the proper reasoning, the result was, nonetheless, correct. Accordingly, we affirm the holding that no *quid pro quo* sexual harassment was proven.

■ Turning to Spencer's request for restoration of the 49 leave days, we are at a loss to see how she has been economically disadvantaged. We do not disagree with Spencer that the purpose of the remedial portions of Title VII is to "make whole" all economic injuries which result from discrimination. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). However,

sor. *Spencer,* 697 F.Supp. at 217, *citing Meritor Savings Bank,* 477 U.S. at 72, 106 S.Ct. at 2408.

**11.** It is noteworthy that Spencer does not contend that any of these findings are erroneous. Thus, we are bound to accept them for purposes of this appeal.

G.E. has already done this. Once Spencer expended all of her sick leave and personal leave time, G.E. approved a special leave allowance for Spencer so that she did not have a single unpaid day during the period in question. Further, Spencer alleged that much of her time off from work was directly related to the sexual assaults and the rape which she subsequently failed to prove. Thus, Spencer has not suffered any out-of-pocket losses and complains only of lost personal leave time which was supposedly the direct result of assaults that were not proven. Under these circumstances, we cannot find error in the trial court's refusal to reinstate her lost leave time.

Finally, we reach Spencer's request for injunctive relief. The district court denied this request in its October 4, 1988, order but later expanded on its reasoning in a subsequent January 17, 1989, order. *Spencer v. General Electric Co.,* 703 F.Supp. 466 (E.D.Va.1989). She complains that this refusal to enjoin G.E. was an abdication by the court of its duty under Title VII to "render a decree which will so far as possible . . . bar like discrimination in the future." [12] *Albemarle Paper Co.,* 422 U.S. at 418, 95 S.Ct. at 2372. The lower court's extensive findings of fact supporting its conclusion that sexual harassment is not likely to recur at G.E., however, persuades us that Spencer is wrong.

We undertake our review of the district court's decision not to issue an injunction with a large measure of restraint. In general, injunctive relief is a matter left to the discretion of a trial court and that discretion should not be disturbed absent a "strong showing of abuse." *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). Al-

though injunctions are by no means mandatory in a Title VII case, a district court must, of course, exercise its discretion in light of the prophylactic purposes of the Act to ensure that discrimination does not recur. *Johnson v. Brock,* 810 F.2d 219, 225 (D.C.Cir.1987); *Albemarle Paper Co.,* 422 U.S. at 416–17, 95 S.Ct. at 2371. If this is done, we then should defer to the lower court's choice in crafting appropriate relief in recognition of its greater familiarity with the peculiar circumstances of the case. *Brock,* 810 F.2d at 226.

In reaching its decision to not order an injunction, the district court thoroughly examined the record before it and concluded simply that Spencer failed to prove that there was a "cognizable danger of a recurrent violation" of Title VII.[13] *Spencer,* 703 F.Supp. at 473. We agree. This is not a case of systematic company-wide discrimination, but rather this case presents an isolated incident of one supervisor run amok. In response to this problem, G.E. has gotten rid of the offending supervisor, transferred plaintiff to a job of equal grade, and instituted an extensive company-wide anti-sexual harassment policy. While it is true that this policy was instituted at least partially in response to this litigation, the trial court found that the policy reflects a bona fide committed effort by G.E. to combat sexual harassment in the workplace. *Id.* at 471.

Spencer's argument for an injunction is in essence a contention that remedial measures undertaken by a defendant after the instigation of litigation will never be adequate to obviate injunctive relief. This is a position that we cannot adopt. Such a principle would inevitably undercut the remedial goals of Title VII in that it would dis-

---

**12.** This is, of course, only part of the court's duty to remedy discrimination under Title VII. A court must also structure its order to eliminate the effects of past discrimination. *Albemarle Paper Co.,* 422 U.S. at 418, 95 S.Ct. at 2372. As the district court concluded, no further relief was necessary on its part because G.E. had already done this by transferring Spencer to a job of equal grade and forcing Neal to leave the company. *Spencer,* 703 F.Supp. at 469.

**13.** The trial court was correct that once Title VII liability was established, the onus to produce evidence that sexual harassment will not recur lies with the defendant, G.E. However, the ultimate burden of proof that an injunction is necessary always remains with the plaintiff, Spencer. *Spencer,* 703 F.Supp. at 469–70 n. 10.

courage voluntary compliance with the Act by removing any incentive for an employer, once sued, to clean its own house. Here, G.E. has done everything practicable to relieve Spencer from the effects of past harassment and to permanently remove sexual harassment from its workplace. Under these circumstances, we see no abuse of discretion by the trial court in refusing to issue an unnecessary injunction. Accordingly, we affirm on this point.

## C. *Attorney's Fees*

Spencer contends that the district court erred when it refused to award her attorney's fees and costs for the time after G.E.'s offer of judgment under Fed.R. Civ.P. 68. She argues that the inherent unquantifiability of non-pecuniary injunctive relief makes impossible any meaningful comparison under Rule 68 between the injunction offered by G.E. and the anti-harassment policy adopted as a result of the lawsuit. Further, she complains that even if a comparison were theoretically possible, G.E.'s offer was so vague and incomplete that it cannot reasonably be compared to the detailed anti-sexual harassment policy. Spencer also argues that G.E.'s ability to unilaterally change the circumstances after its Rule 68 offer was rejected makes the Rule's application to defeat her post-offer fee request nothing more than a defendant's tactical gambit that is directly inimicable to Title VII's policy of encouraging private citizens to vindicate their civil rights by providing a means for adequate attorney compensation. Finally, Spencer maintains that even if G.E.'s offer and the final judgment should be compared under the Rule, the detailed anti-harassment policy adopted by G.E. along with the other relief she received is far more favorable than G.E.'s pretrial offer.

Amicus curiae, the Equal Employment Opportunity Commission ("EEOC"), joins in this final argument and also encourages us to overrule the trial court's opinion to the extent that it sanctions comparison of pecuniary relief with non-pecuniary relief in making the Rule 68 comparison. Rather, EEOC maintains that a better approach would be, where a plaintiff achieves significant non-pecuniary relief, to disregard any monetary differences between the Rule 68 offer and the final judgment and compare only the non-pecuniary aspects of the two to determine whether or not the final judgment is more favorable. EEOC argues that this standard is more compatible with Title VII's overriding interest in eliminating discrimination.

In its cross-appeal G.E. raises several issues regarding the fee matter, only two of which merit our discussion. The first is that in making the Rule 68 comparison, a trial court is constrained by the plain language of the Rule and must compare only the terms of the actual judgment entered, as opposed to the actual result obtained, with the terms of the offer. Thus, G.E. maintains that because no injunction was entered against it and because the anti-harassment policy it adopted was not part of the lower court's formal judgment, G.E.'s pre-trial offer was clearly superior to Spencer's judgment. Second, G.E. contends that Spencer is not a prevailing party in this litigation because she was primarily seeking monetary damages, which she did not receive, rather than the anti-harassment policy that was implemented.[14]

Amicus curiae, the Equal Employment Advisory Council ("EEAC"), joins G.E. in its first argument. It also urges that we adopt a standard of comparison under Rule 68 that abstains from any comparison of non-pecuniary aspects of an offer and judgment and instead focuses solely on the monetary relief offered versus the monetary relief received. EEAC argues that this standard has the benefit of ease of application and is particularly appropriate in cases such as this where monetary relief

14. G.E. also contends that Spencer's excessive settlement demands and fee requests justify a denial or reduction of the award. We reject these arguments on the reasoning of the district court. *Spencer,* 706 F.Supp. at 1243–44. G.E. also maintains that the pre-offer fees awarded were excessive. However, our review of the record demonstrates that the lower court's calculation of pre-offer fees was reasonable and should be affirmed. *Id.* at 1244–48.

was clearly the primary focus of the plaintiff's efforts.

We will address the prevailing party issue raised by G.E. first and then move on to the parties' Rule 68 contentions.

■ 1. In *Texas State Teachers Assoc. v. Garland Indep. School Dist.*, — U.S. —, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), the Supreme Court made clear that as long as a party succeeds on "any significant issue in the litigation which achieved some of the benefit that the part[y] sought in bringing suit," that party has "prevailed" for purposes of fee-shifting in a civil rights action.[15] *Id.* 109 S.Ct. at 1493 (quotation omitted). In reaching this conclusion, the Court expressly considered and rejected G.E.'s position that prevailing party status should hinge on plaintiff's success on its primary grounds for relief.[16] *Id.* As long as the plaintiff can "point to a resolution of the dispute which changes the legal relationship between itself and the defendant ... in a manner which Congress sought to promote in the fee statute," that plaintiff has prevailed. *Id.* The Court recognized the inherent limits to this rule and noted that, in a rare case, a plaintiff's technical success on a claim may be so *de minimis* that it cannot be said that the plaintiff has "prevailed" for fee-shifting purposes. *Id.*

Turning to the case at hand, if we were to look only at the one dollar judgment entered below in evaluating Spencer's success, we might be faced with just such a rare case. However, our inquiry should not be so limited. In *Child v. Spillane*, 866 F.2d 691, 692–93 (4th Cir.1989), we recognized that to get a truer picture of a plaintiff's success we should look outside the final judgment to voluntary actions taken by a defendant so long as those actions

are causally connected to the litigation. Here, the trial court found as a fact that this lawsuit served "as a catalyst for the prompt development and promulgation of G.E.'s revised [anti-harassment] policy." *Spencer*, 706 F.Supp. at 1238. This finding is sufficient to support the court's conclusion that Spencer was a prevailing party. As we said in *Child*, "[f]ees may be awarded even where a party's efforts have merely served to a limited extent to expedite the planning and achievements gained." *Child*, 866 F.2d at 693 (quotation omitted). Thus, we affirm the trial court's holding that Spencer was a prevailing party for purposes of 42 U.S.C. § 2000e–5(k).

2. We begin our discussion of the Rule 68 issues by disposing of Spencer's contention that the Rule's application to Title VII cases in some way undercuts the policy goals of the Act. In *Marek v. Chesny*, 473 U.S. 1, 10–12, 105 S.Ct. 3012, 3017–18, 87 L.Ed.2d 1 (1985), the Supreme Court found that the application of Rule 68 to civil rights cases posed no such policy concerns.[17] Rather, the Court found that Rule 68's neutral policy of encouraging settlements, while certainly making civil rights plaintiffs think hard before continuing litigation, is fully consistent with the Congressional intent behind fee-shifting provisions. *Id.* 105 S.Ct. at 3017. The Supreme Court simply found nothing incompatible between the policies of protecting civil rights and promptly settling litigation. *Id.* at 3018.

■ Further, the fact that a civil rights defendant can voluntarily comply with Title VII and negate the basis for a plaintiff's request for injunctive relief after a Rule 68 offer has been rejected does not make the Rule hostile to Title VII. In all litigation, after a plaintiff rejects a settlement offer,

15. The Court was specifically addressing 42 U.S.C. § 1988; however, this reasoning applies equally to fee requests under 42 U.S.C. § 2000e–5(k).

16. The Court rejected such a rule because of its inherent unworkability. To hinge recovery of fees on the determination of a plaintiff's desire of what she most wanted to achieve by a lawsuit would mire the courts in endless fee litigation over issues of subjective intent that have noth-

ing to do with the purposes of the fee-shifting statutes—to ensure enforcement of the civil rights laws. *Id.*

17. In *Chesny*, the Court was examining the interplay between Rule 68 and 42 U.S.C. § 1988. However, its reasoning applies with full force to fee requests under 42 U.S.C. § 2000e–5(k). *Bentley v. Bolger*, 110 F.R.D. 108, 112 (C.D.Ill. 1986).

a defendant can always change its conduct to comply with a plaintiff's demands, thereby reducing the plaintiff's chances for victory and reducing her claims for damages and fees. This is one of the inherent risks of litigation that falls no more heavily on a Title VII litigant than it does on any other civil complainant. Rule 68 must apply with full force to this claim as it does to all other civil actions brought in the federal courts. We do not see how its even-handed application is contrary to the dictates of Title VII and thus, to the extent Spencer's and the EEOC's arguments are based on a hostility between Rule 68 and Title VII, they are rejected.

 We begin our analysis of the rest of the Rule 68 issues where we most properly should, the text of the Rule itself:

Rule 68. Offer of Judgment

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow *judgment* to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued.... [If the offer is rejected and if] the *judgment* finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.[18]

(Emphasis added.)

The language of the Rule could not be more plain. A court's task under the Rule is to compare the offer of "judgment" to the "judgment finally obtained" by the offeree and determine if the latter is more favorable than the former. In making this comparison, the court below strayed from this plain mandate, seeing fit to include the non-judgment relief Spencer acquired as part of her "judgment finally obtained." *Spencer*, 706 F.Supp. at 1241. This was in error.[19]

Our interpretation of Rule 68 is guided by the Supreme Court's recent admonition in *Pavelic & Leflore v. Marvel Entertainment Group*, —— U.S. ——, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989): "We give the Federal Rules of Civil Procedure their plain meaning, and generally with them as with a statute, when we find the terms unambiguous, judicial inquiry is complete." *Id.* (citation, quotation omitted). The Court made clear first in *Delta Airlines, Inc. v. August*, 450 U.S. 346, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981), and later in *Chesny*, that this principle of interpretation applies with full force to Rule 68. In *Delta*, the Court repeatedly stressed that a literal interpretation of the Rule was the only appropriate reading of its language. *Id.* at 352–62, 101 S.Ct. at 1150–55. In *Chesny*, the Court emphasized that the "plain meaning" of the Rule is the only one which will yield the proper relationship between it and the civil rights fee-shifting statute in question. As applied to the issue at hand, this principle and the reasoning of these decisions demand that we interpret the word "judgment" to mean "judgment."

Spencer's and EEOC's arguments about the lower court's application of the Rule do not specifically address this issue and seem to assume that "judgment finally obtained" really means "relief finally obtained." Overlooking the fact that this assumption ignores the plain wording of the Rule, we note that common sense informs that often the relief a plaintiff obtains from a lawsuit is quite different from the judgment obtained from that lawsuit. In fact, many lawsuits are voluntarily dismissed before ever reaching the judgment stage because the mere filing of the suits enabled the aggrieved parties to obtain all the relief they sought. Thus, "judgment" and "relief" are commonly understood to be two very different concepts and to treat the

---

**18.** While the Rule speaks only of "costs," it is settled that in litigation under civil rights statutes that contain fee-shifting provisions which award attorney's fees as part of costs, attorney's fees recovery is also subject to the Rule. *Chesny*, 473 U.S. at 9, 105 S.Ct. at 3016.

**19.** Perhaps the district court took this approach assuming that it should look at the same total relief received by Spencer in making the Rule 68 comparison as it did in making the "prevailing party" determination under 42 U.S.C. § 2000e–5(k). As we set out below, this assumption cannot stand because it disregards the plain language of the Rule.

two interchangeably is an interpretation of the Rule we cannot adopt.[20]

We find implicit in Spencer's and EEOC's arguments the suggestion that Rule 68 should be given an expansive interpretation to effectuate the strong public policies behind Title VII. We reject this temptation. Rule 68 is a rule of procedure, not substance. Its purpose is to provide an efficient and neutral means to settle litigation, irrespective of the nature of the underlying disputes. As the Supreme Court noted in *Chesny*, Rule 68 does not, and was not intended to, favor either plaintiffs or defendants in civil rights litigation. *Chesny*, 473 U.S. at 10–11, 105 S.Ct. at 3017. And as the Court recently made clear in *Martin v. Wilks*, — U.S. ——, 109 S.Ct. 2180, 2187–88, 104 L.Ed.2d 835 (1989), the Rules of Civil Procedure must not be warped to conform to the demands of Title VII litigation.

In sum, we are persuaded by G.E. that the unambiguous language of Rule 68 must be given its plain meaning and accordingly, in making the comparison required by the Rule, a trial court should consider only the terms of the "judgment finally obtained" by the offeree, and nothing more.

This holding does not weaken the trial court's conclusion that Spencer was not entitled to post-offer fees but, in fact,

strengthens it. Spencer was offered $10,000, job-related relief, and an injunction prohibiting G.E. from employment practices violating Title VII. The judgment she finally obtained was for one dollar.[21] Therefore, though on different reasoning, we affirm the trial court's holding that the Rule 68 offer precluded the award of post-offer fees and costs.[22]

## III.

Accordingly, for the reasons stated above, the judgment of the trial court is affirmed.

AFFIRMED.

MURNAGHAN, Circuit Judge, dissenting in part:

While the majority has properly affirmed the district court on most of the thorny issues in this complex and messy case, I write to express my disagreement with its conclusion that G.E. successfully rebutted element four of the *prima facie* case of *quid pro quo* sexual harassment.

The lower court's finding of fact, which the majority accepts, that Neal did process and submit the necessary paperwork for Spencer's promotion is, to my mind, clearly erroneous.[1] Insofar as G.E.'s rebuttal evidence hinges on that fact, the presumption of *quid pro quo* harassment has not been rebutted.

---

**20.** The court in *Stewart v. Sonoma County*, 634 F.Supp. 773 (N.D.Cal.1986), rejected a similar argument. There, the plaintiff argued that it was unfair to make the Rule 68 comparison only to the judgment she received when it was possible that she might obtain more relief in pending state court actions. In rejecting this argument, the court reasoned that such an interpretation of Rule 68 would lead to uncertainty in settlement negotiations and that "[h]ad the result obtained by plaintiff been intended, the rule would have referred to recovery instead of judgment." *Id.* at 776; *see also Johnston v. Penrod Drilling Co.*, 803 F.2d 867, 870 (5th Cir. 1986).

**21.** The clear disparity between the judgment that Spencer was offered and the judgment that she obtained makes it unnecessary for us to rule on the parties' and amici's various suggestions as to how a trial court should weigh the relative worth of pecuniary and non-pecuniary relief in striking the Rule 68 balance. The question of if

and, if so, how non-pecuniary relief should be assessed and the question of whether or not a court should try to compare pecuniary with non-pecuniary relief are thorny issues that we leave for another day. We reiterate, however, that the touchstone of any valid comparison under Rule 68 must be the Rule's plain language.

**22.** G.E. does not raise and, consequently, we do not reach the issue of G.E.'s entitlement to costs under the Rule. *See Crossman v. Marcoccio*, 806 F.2d 329 (1st Cir.1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987).

**1.** Contrary to the majority's assertion (n. 11), Spencer did not refrain from challenging those findings. Rather, in the context of urging us to find, as we have, the establishment of a *prima facie* case, she devotes two pages of her reply brief to the insufficiency of the evidence establishing that Neal submitted the promotion papers.

In his opinion, Judge Ellis specifically found "Neal's testimony is generally not worthy of belief." *Spencer*, 697 F.Supp. at 209. It would be understandable for the district court, nevertheless, to credit Neal's testimony in some areas especially if corroborated by other evidence. Such is, however, simply not possible with regard to his testimony regarding submission of Spencer's promotion papers. Neal was asked repeatedly by G.E.'s counsel, Spencer's counsel, and the court whether he filled out and submitted the paperwork for Spencer's promotion. His responses varied. In reply to G.E. asking if he filled out the paperwork recommending her for a promotion, Neal replied, "I think so." The court asked if he had a specific recollection of having submitted the papers and he replied "no, sir." Later, he responded once that he had filled out the paperwork and then again that "I thought I did." He never was able to remember to whom he submitted this paperwork. He named two individuals to whom he might have given the papers, both of whom testified for G.E. and made no mention of the papers. Spencer, in contrast, testified that the manager of Employee Relations informed her that he had never seen any promotion papers. *Id.* at 207. G.E. never even attempted to rebut by producing anyone in G.E.'s employ who received the papers advocating Spencer's promotion.

Both parties agree that any rebuttal of the *prima facie* case hinges on Neal's testimony. The very testimony of Neal on that subject is simply not believable on this critical point and hence I part company with the majority and cannot find the presumption of sexual harassment to be rebutted.

Insofar as a reversal of the *quid pro quo* question would require a remand for a determination of damages, I also must necessarily disagree with the judgment comparisons for Rule 68 purposes.