972 F.2d 339
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Marie ASSA'AD-FALTAS, M.D., MPH, Plaintiff-Appellant,
v.
VIRGINIA DEPT. OF HEALTH, Defendant-Appellee,
and Commonwealth of Virginia, Lancaster County and its board
of supervisors; Richmond County and its board of
supervisors; Westmoreland County and its board of
supervisors in thier political institutional capacities;
Gerald Baliles; Mary Sue Terry; Eva Tieg; C.N.G. Buttery;
Robert Stroube; Robert Swander; Milan Hapala; Thomas
Jacks; John Rupp; Carole Nance; H. Bruce Dendy, III;
Jeffers Schmidt, Jr.; Margaret Robinson; Anita Sanders;
Stephen Whiteway; Eston Burge; H. McDonald Rimple; Lea
Wilds; Marjorie Reugger; Sheila Spellman; Ruth Jennette;
Victor Goodman; marily Carter; Jane Flint; Deborah King,
in their official and individual capacities; Richard Kauf;
Maurice Martin; Rappahanock Medical Center; and Mr.
Dawson, and other unknown named persons, in their private
capacities, Defendants.
 No. 91-3025.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 3, 1992
Decided: August 20, 1992
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, District Judge. (CA-90-166)
 ARGUED: David Raymond Simonsen, Jr., Richmond, Virginia, for Appellant.
 Guy Winston Horsley, Jr., Senior Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Appellee.
 ON BRIEF: Mary Sue Terry, Attorney General of Virginia, Gail Starling Marshall, Deputy Attorney General, Neil A.G. McPhie, Senior Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Appellee.
 E.D.Va.
 Affirmed.
 Before PHILLIPS, SPROUSE, and WILKINSON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Marie Assa'ad Faltas (Faltas), a medical doctor formerly employed by the Virginia Department of Health (the Department), challenged her discharge on grounds that it was motivated by gender and national origin discrimination in violation of 42 U.S.C. § 2000e2 (1981) (Title VII). She also claimed retaliatory discharge in violation of 42 U.S.C. § 2000e-3 (1981) (Title VII). At the close of Faltas's case in chief, the district court granted the Department's motion to dismiss Faltas's claim of national origin discrimination. Following completion of trial, the court held that Faltas failed to establish a prima facie case of gender discrimination. Faltas now appeals the district court's disposition of her sex discrimination claim, as well as her claim of retaliatory discharge.[1] She apparently does not challenge the district court's dismissal of her claim of national origin discrimination. Finding no reversible error in the decision of the district court, we affirm.
 
 
 2
 * In January of 1989 the Department hired Faltas to fill the position of Director of the Northern Neck Health District. As a physician licensed in the state of Virginia, and as a recipient of a Masters degree in Public Health, she was well qualified for the position. H. MacDonald Rimple (Rimple), also a medical doctor, was primarily responsible for recruiting Faltas for the job of District Director. Once Faltas was hired, Rimple acted as her direct supervisor. Approximately three and a half months after Faltas's starting date, following Rimple's first formal evaluation of her job performance, she was discharged.
 
 
 3
 Aside from these background facts, the parties disagree as to practically every fact material to what transpired during Faltas's brief tenure as Director of the Northern Neck Health District. The Department contends that Faltas immediately created an unfavorable impression by adopting an extremely confrontational style of management. According to evidence adduced at trial, many of her colleagues, her subordinates and her patients found her to be abrasive and arrogant. Rimple testified that, after receiving complaints about Faltas's behavior, he took her to lunch several times in order to counsel her about her lack of interpersonal skills. Rimple maintained that during those lunch meetings he was generally complimentary of her work, but requested that she be less demanding and confrontational with colleagues and patients. In spite of these counseling sessions, the Department claims, Faltas continued to alienate colleagues and patients, causing serious morale problems to develop in the Northern Neck District office.
 
 
 4
 Rimple testified that on April 14, 1989, having been apprised fully of Faltas's shortcomings, and having himself observed her behavior, he met with her to discuss her poor performance and to inform her that her numerical evaluation score, which he had tabulated according to Department protocols, fell below acceptable standards. According to his testimony, he told her that, due to a performance score of less than 20, he would have to recommend her discharge. Rimple claims that upon receiving this news Faltas became defensive and angry, questioning the veracity of his evaluation of her performance, as well as the accuracy of his mathematical calculations in tabulating her numerical performance rating. According to Rimple, it was after he gave her the news of her imminent discharge that she raised for the first time her accusations of sexual harassment.
 
 
 5
 Rimple, who had never before been accused of sexual harassment, claims to have been astounded by Faltas's charge. He testified that he never made any sexual advances toward Faltas. Rimple and the Department admitted at trial that he often kisses and hugs employees, but explained that such physical signs of affection and approval are common in Trinidad, where Rimple was raised. Other employees of the Department, both male and female, testified that Rimple was physically demonstrative with them, but that everyone considered his behavior normal and acceptable.
 
 
 6
 On April 17 Rimple formally submitted his evaluation of Faltas's work to his superiors. On April 26, Rimple again met with Faltas to discuss the final version of her evaluation report. Shortly thereafter, in accordance with Rimple's evaluation, Faltas was notified of her discharge.
 
 
 7
 Faltas offers a starkly different version of events. According to her, Rimple consistently exhibited physical signs of affection for her, including but not limited to kissing her on the cheek when greeting her, holding her hand during their lunch meetings and putting his arm around her when introducing her to the District staff. According to Faltas, Rimple accompanied those physical signs of affection with what at first amounted to veiled suggestions of romance, but later developed into frank declarations of love. Faltas claims that the private lunches and meetings that Rimple arranged, far from being "counseling sessions," were contrived as opportunities for Rimple to press his case as a suitor. Faltas contends that only a few days before their April 14 meeting, Rimple offered to defend her from attacks by her subordinates on the condition that she respond to his romantic advances.
 
 
 8
 Faltas contends that on April 12, two days before her first evaluation meeting with Rimple, she sent a memorandum to Rimple and his supervisor complaining of sexual harassment. In fact, the memorandum, which Rimple apparently received on April 13, focused on Faltas's criticism of the procedure under which her performance was to be evaluated; however, the memorandum also stated that:
 
 
 9
 [I] must assert that I will not accept any attempt to compromise the scope of my authorities based on my young age relative to that of other district health directors, my female sex, my Coptic race, or my Egyptian national origin; nor will I accept a duty to satisfy every whim of my superiors and my subordinates.... VDH [has a duty] to provide a work environment free of harassments to all its employees. To this effect are relevant portions of Meritor Savings Bank, FSB. v. Vinson et.al., 106 S.Ct. 2399 (1986).
 
 
 10
 Joint Appendix at 227. Rimple testified at trial that he understood this memorandum to be a general complaint about Faltas's perception of unfair treatment. He claims that he did not understand this communication to be a complaint about sexual harassment. Faltas does not contend that Rimple's asserted interpretation of her memorandum is false or unreasonable.
 
 
 11
 Faltas maintains that during her meeting with Rimple on April 14, he read to her the evaluation scores that he intended to assign to her work, and those scores added up to 24.5, a satisfactory level of performance. She further contends that, at that meeting, in response to his questions of why she was avoiding him, she made plain her opposition to his sexual harassment. Faltas claims that after their April 14 meeting ended, and after she had confronted Rimple with her accusation of sexual harassment, he lowered her evaluation score to 17.5, an unsatisfactory level of performance. Not until her April 26 meeting with Rimple, Faltas claims, was she aware that her performance had been adjudged unsatisfactory.
 
 
 12
 Faltas filed her original complaint in this case in the United States District Court for the Eastern District of Virginia, Norfolk Division, asserting a number of state and federal causes of action against several defendants, including the Department. Because a related case previously had been initiated in the Richmond Division, Assa'ad-Faltas v. Virginia, No. 89-00275-R (E.D. Va. July 26, 1989) (Title VII claims dismissed for lack of jurisdiction because EEOC had neither concluded its processing of Faltas's charge nor issued a right-to-sue notice), the case was transferred to the Richmond Division on motion of the Department. Pursuant to motions to dismiss and motions for summary judgment, the district court dismissed all causes of action other than Faltas's Title VII claims of national origin and sex discrimination, and all parties except the Department. Faltas then filed an amended complaint in the form of a More Definite Statement, alleging that she had been harassed and discharged because of her sex and national origin, and that she was fired in retaliation for her complaints about harassment, all in violation of Title VII. Faltas sought declaratory and compensatory relief, including back pay, lost benefits, reinstatement and attorneys fees.
 
 
 13
 At the conclusion of Faltas's evidence, the court granted the Department's motion to dismiss her claim of Title VII national origin discrimination. After the completion of the trial the court entered judgment for the Department on the remaining claim of sex discrimination. This appeal followed.
 
 II
 
 14
 Faltas presents three separate grounds for reversal. She argues first that the district court was clearly erroneous in its assessment of the evidence. Second, Faltas contends that the district court erred by finding that she failed to establish a prima facie case of quid pro quo sexual harassment. Finally, Faltas argues that the district court erred by failing to consider her claim of retaliatory discharge. We address each of these contentions in turn.
 
 
 15
 * Although Faltas presents her challenge to the evidence as a single, unitary argument, she in fact offers two separate attacks on the district court's treatment of the evidence, each calling for its own standard of review. Neither argument compels reversal.
 
 
 16
 Faltas first contends that the district court weighed the evidence incorrectly and lent credence to testimony that was inherently incredible. She points to evidence on the record which favors her version of events, evidence that she claims the district court simply ignored. She also highlights alleged inconsistencies in Rimple's testimony about her job performance, and claims that these alleged inconsistencies render Rimple's testimony so incredible that it was error for the court to rely upon it.
 
 
 17
 We review factual findings of the district court for clear error. See Anderson v. Bessemer City, 470 U.S. 564 (1985). We find no such error here. Presented with hotly contested facts, supported by testimony on both sides, the district court was called upon to make difficult credibility determinations. In most instances, the court found the evidence offered by the Department and Rimple to be more credible than that offered by Faltas. We find on the record absolutely no grounds to believe that the district court ignored important evidence or that Rimple's testimony was incredible on its face. We therefore hold that the district court's findings of fact were not clearly erroneous.
 
 
 18
 Faltas also claims that the district court erred by admitting several pieces of hearsay evidence in the form of memoranda and letters critical of Faltas's job performance. Those memoranda and letters, admitted over Faltas's timely objection, were written by Department employees and officials during Faltas's tenure as District Director, and were offered at trial in spite of the fact that the authors were not made available for cross examination. We review a district court's ruling regarding hearsay for abuse of discretion. See United States v. Ellis, 951 F.2d 580, 582 (4th Cir. 1991).
 
 
 19
 Hearsay is defined as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The Department claims that the letters and memoranda were introduced at trial not to prove the truth of matters asserted in their texts-that Faltas's interpersonal skills were so lacking that she was unable to perform her job properly-rather, they were introduced to prove that Faltas's superior, Rimple, had received strongly worded complaints about her performance, and thus had legitimate, sex-neutral reasons for recommending that she be discharged. The Department points out that, in order to prove her claim of quid pro quo sexual harassment, Faltas was required to show a causal link between her refusal to accede to Rimple's alleged sexual advances and Rimple's ultimate decision to recommend her discharge. See discussion infra part II.B. By offering into evidence letters and memoranda in which officials complained about Faltas's behavior, the Department was able to support its claim that Rimple's decision to recommend Faltas's discharge was based on the complaints he received, not on her refusal to accept his alleged romantic overtures.
 
 
 20
 We agree with the Department that the letters and memoranda were introduced into evidence for the limited, non-hearsay purpose of demonstrating that Rimple had significant cause, irrespective of any alleged romantic interest, to conclude that Faltas performed her work poorly, and to recommend that she be discharged. We therefore find that the district court did not abuse its discretion by admitting the various letters and memoranda into evidence.
 
 B
 
 21
 Faltas next claims that the district court erred by finding that she failed to establish a prima facie case of quid pro quo sexual harassment. A district court's determination regarding the establishment of a prima facie case contains elements of both law and fact: the court first must establish the facts and then apply those facts to the settled law. Inasmuch as Faltas's challenge to the district court's prima facie determination is based on her contention that the court misconstrued the facts, we review the district court's conclusion for clear error. See Woodard v. Lehman, 717 F.2d 909, 913 (4th Cir. 1983).
 
 
 22
 We have held in the past that although sexual discrimination exists in many forms, it can be categorized roughly as either hostile work environment discrimination, or quid pro quo discrimination. Spencer v. General Electric Co., 894 F.2d 651, 658 (4th Cir. 1990). The latter category describes the claim put forward by Faltas: that sexual consideration was demanded by Rimple in exchange for job benefits. Quid pro quo discrimination can be established by proving each of five prima facie elements:
 
 
 23
 1. The employee belongs to a protected group.
 
 
 24
 2. The employee was subject to unwelcome sexual harassment.
 
 
 25
 3. The harassment complained of was based upon sex.
 
 
 26
 4. The employee's reaction to the harassment affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment. The acceptance or rejection of the harassment must be an express or implied condition to the receipt of a job benefit or cause of a tangible job detriment to create liability. Further, as in typical disparate treatment cases, the employee must prove that she was deprived of a job benefit which she was otherwise qualified to receive because of the employer's use of a prohibited criterion in making the employment decision.
 
 
 27
 5. The employer, as defined by Title VII, 42 U.S.C. § 2000e(b), knew or should have known of the harassment and took no effective remedial action.
 
 
 28
 Id.
 
 
 29
 Once the prima facie case is established, a presumption arises that the plaintiff has suffered quid pro quo sexual harassment and the burden of production shifts to the defendant to rebut this presumption with legitimate, nondiscriminatory reasons for the employment decision in question. Id. at 659. If the presumption is rebutted, the burden of production returns to the plaintiff to show that the defendant's proffered nondiscriminatory reasons are pretextual and that the employment decision was based on a sexually discriminatory motive. Id. Throughout this shifting scheme of evidentiary burdens the ultimate burden of persuasion remains with the plaintiff. Id.
 
 
 30
 In the instant case the district court found that Faltas failed to establish a prima facie case of quid pro quo sexual harassment, and that, as a result of this failure, the burden of production never shifted to the Department to offer a sex-neutral justification for her discharge. Specifically, the court found that Faltas failed to offer credible evidence to support her bedrock contention that Rimple exhibited sexually suggestive behavior toward her. To quote the district court:
 
 
 31
 None of the behavior described by the plaintiff was overtly sexual in nature. The plaintiff conjured up sexual inferences in her own mind. These inferences were not reasonable and are unsupported by the total record. The Court did not find plaintiff to be a credible witness and specifically rejects her allegations of sexual harassment.
 
 
 32
 Marie Assa'ad Faltas v. Commonwealth of Virginia, Virginia Department of Health, No. 90-00166-R, slip op. at 6 (E.D. Va. 1991). The district court reasoned that, lacking credible evidence that Rimple subjected her to unwelcome sexual advances, Faltas could not satisfy the second element of the prima facie test of quid pro quo sexual harassment.
 
 
 33
 Faltas objects to the court's determination on grounds that she offered evidence, in the form of her own testimony, sufficient to satisfy her burden of production on the second element of the prima facie test. While it is true that Faltas testified on her own behalf that Rimple exhibited sexually suggestive behavior and explicitly declared his love for her, it is equally true that the district court, in carrying out its function of weighing the credibility of the evidence presented, was free to disbelieve her testimony and credit that of Rimple and other employees of the Department. Rimple's complete denial of any sexual advance was supported not only by his own testimony but by the testimony of other female and male employees, who testified that, while Rimple had a physically demonstrative way of dealing with people, his mannerisms were never regarded as sexual by those who work with him.[2] In short, the district court did not commit clear error by concluding that Faltas failed to present credible evidence that Rimple subjected her to unwelcome sexual advances, and, concomitantly, that she failed to establish a prima facie case of quid pro quo sexual harassment.
 
 C
 
 34
 Finally, Faltas contends that the district court committed fatal error by entirely disregarding one of her central legal arguments: that Rimple arranged for her to be discharged because she complained to him and to other superiors about his sexual harassment. Such an employment action, if true, would constitute a retaliatory discharge forbidden by 42 U.S.C. § 2000e-3(a).
 
 
 35
 An employee claiming retaliatory discharge is required initially to establish a prima facie case consisting of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985). Under this prima facie test, the employee need not prove that she actually was subjected to discrimination violative of Title VII, only that she had a good faith belief that a violation occurred, complained of the violation, and, as a result, suffered an adverse employment action. See id. at 357 n.1. Once the prima facie case has been presented, the employer then has the burden of producing a legitimate nondiscriminatory reason for the adverse action, thereby rebutting the presumption of retaliation raised by the prima facie case. Id. The employee may then offer evidence to show that the proffered nondiscriminatory justification is pretextual; however, for the employee to disprove such a justification, she must show that the adverse action would not have occurred "but for" the protected conduct. Id. at 365-66.
 
 
 36
 Faltas is correct that the district court did not address explicitly her claim of retaliatory discharge. However, we reject her contention that the district court's failure to address her retaliation claim constitutes reversible error.
 
 
 37
 As a preliminary matter, it is not entirely clear that Faltas did in fact raise her claim of retaliatory discharge before the district court. The Department contends that Faltas failed to raise her retaliation claim in her administrative challenge, and before the district court. The Department also notes that Faltas failed at trial to bring her retaliation claim to the attention of the court. Therefore, the Department argues, Faltas waived her retaliation claim, and this court is jurisdictionally barred from considering the argument on appeal.
 
 
 38
 A review of Faltas's pleadings reveals that the closest she came to raising a claim of retaliatory discharge was in paragraph 24 of her More Definite Statement, where she asserted that:"as a result of her report of Rimple's illegal actions, Defendant Virginia Health Department unlawfully terminated the Plaintiff's employment." Although this does not represent a clear statement of a claim of retaliation, this court has in the past interpreted plaintiffs' Title VII pleadings liberally. See Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992) ("the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to the allegations contained in the charge and growing out of such allegations during the pendency of the case before the [Equal Employment Opportunity] Commission"); see also Kotcher v. Rosa & Sullivan Appliance Center, Inc., 957 F.2d 59 (2d Cir. 1992) (plaintiff's sexual harassment complaint included an allegation of retaliatory discharge, even where plaintiff never invoked the term "retaliation"). Thus, there is support in the law for Faltas's contention that her claim of retaliatory discharge was before the district court, in spite of the fact that her pleadings did not explicitly state such a claim.
 
 
 39
 However, even assuming Faltas's retaliation claim was presented properly to the district court, we are convinced that the court effectively disposed of the issue. In evaluating Faltas's claims of Title VII sex and national origin discrimination, the district court found as fact that "plaintiff was not performing her job to the satisfaction of her employer." The court stated that she was "a poor manager of people," and was discharged because "community confidence and employee morale plunged." Given these factual determinations, determinations supported by the record as a whole, there is no conceivable possibility that Faltas could have proven a "but for" causal nexus between her discharge and her employer's alleged retaliatory motive. Without proof of such a causal nexus, her claim could not have succeeded. Therefore, even though the district court did not explicitly reject Faltas's claim of retaliatory discharge, we believe that such a holding was implicit in the court's findings.
 
 III
 
 40
 The district court in this case was presented with widely divergent versions of the historical facts underlying Faltas's legal claims. Faced with this contradictory evidence, the court ably performed the difficult task of assessing credibility. Based on our review of the record, we cannot say that the court's factual determinations were clearly erroneous, and we therefore affirm the court's decision.
 
 AFFIRMED
 
 
 [1]
 The parties disagree as to the court's disposition of Faltas's retaliatory discharge claim. Faltas contends that the court erred by disregarding her retaliation claim. The Department contends that Faltas waived her retaliation claim by failing to raise it in her pleadings or at trial. See discussion infra part II.C
 
 
 [2]
 Faltas argues that the district court erroneously relied on testimony that Rimple generally was physically demonstrative toward his colleagues. As Faltas frames the argument, the court wrongly concluded that because Rimple treats all women as objects of his physical affection, it was acceptable for him to subject Faltas to unwelcome sexual advances
 If the district court had in fact formed such an inference, Faltas's argument might have merit. However, Faltas has misconstrued the evidence and the district court's analysis of it. Contrary to Faltas's contention, the record contains testimony by both male and female colleagues of Rimple's to the effect that he often "touch[es] you on the shoulder," and has "mannerisms of cohesion." Testimony of William P. Sifford, Jr., Joint Appendix at 135. All who testified to this effect specified that Rimple intends nothing sexual by his frequent touching. From this sort of evidence the court was free to form the inference that, even if Faltas truly believed Rimple's behavior to be sexually suggestive, her belief was unreasonable.